IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID J.[1],                              )
                                          )
              Plaintiff,                  )
                                          )
vs.                                       )    Case No. 24-CV-0568-SMY
                                          )
LELAND DUDEK,                             )
ACTING   COMMISSIONER OF SOCIAL )
SECURITY,                                 )
                                          )
              Defendant.                  )

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff David J. seeks judicial review of the final

agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to

42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for DIB in October 8, 2019, alleging a disability onset date beginning in

December 28, 2009 (Tr. 351).  His claim was initially denied by the state agency (Tr. 78–105) and

was partially approved on reconsideration on December 14, 2020, finding Plaintiff disabled as of

October 8, 2019 (Tr. 18; 140–42).

Plaintiff requested an evidentiary hearing which took place on May 27, 2022 (Tr. 42–58).

Following the hearing, the Administrative Law Judge ("ALJ") issued a partially favorable decision

on June 2, 2022, finding Plaintiff disabled before October 17, 2013, and again as of October 8,

2019, but not disabled between October 17, 2013, and October 7, 2019 (Tr. 149–60).  The Appeals

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P.
5.2(c) and the Advisory Committee Notes.

Council remanded the case, directing the ALJ to reconsider the medical opinions from Plaintiff's treating physicians, Drs. Luis Giuffra and David Overstreet (Tr. 170–71).

The ALJ held a second hearing and issued a new decision on October 25, 2023, again finding Plaintiff not disabled between October 17, 2013, and October 7, 2019, while reaffirming disability before and after that period (Tr. 18–32).  On January 25, 2024, The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1–3).

## Issues Raised by Plaintiff

Plaintiff raises the following issues for judicial review:

1. Whether substantial evidence supports the ALJ's finding of medical improvement from October 17, 2013 to October 7, 2019.

2. Whether the ALJ properly weighed the opinions of Plaintiff's treating physicians.

## Legal Standard

To qualify for disability insurance benefits, a claimant must be disabled within the meaning of the applicable statutes.  Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments

enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### Decision of the ALJ

The ALJ followed the five-step analytical framework with respect to Plaintiff's application. She determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset

date (Tr. 22). She found that Plaintiff had the severe impairments of bipolar disorder, psychosis,

schizoaffective disorder, and ADHD (Tr. 22), and that he had moderate limitations in his ability

to interact with others, concentrate, persist, or maintain pace, and adapt or manage himself (Tr.

26–27). The ALJ also determined Plaintiff's condition improved as of October 17, 2013, so that

he could maintain the concentration necessary to stay on task and meet reasonable production

requirements. The ALJ concluded that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of the impairments listed in 20 C.F.R. Part

404, Subpart P, Appendix 1 (Tr. 26–27).

> The ALJ found the following regarding Plaintiff's Residual Functional Capacity ("RFC"):

> After careful consideration of the entire record the undersigned finds that from
> October 17, 2013, through October 7, 2019, the claimant has the residual functional
> capacity to perform a full range of work at all exertional levels but with the
> following non-exertional limitations: he could maintain the concentration required
> to understand, remember, and carry out simple and routine tasks. Plaintiff could
> not work at a fast pace such as an assembly line but could stay on task and meet
> reasonable production requirements in an environment that allowed him to maintain
> a flexible and goal-oriented pace. He was limited to work that required only
> occasionally changes in the work setting, introduced gradually, and he could have
> occasional interaction with co-workers and the public.

(Tr. 26)

The ALJ credited the Vocational Expert's testimony and determined that, during the period from

October 17, 2013 to October 7, 2019, Plaintiff could perform work at all exertional levels such as

stores laborer, hospital cleaner, and housekeeping cleaner (Tr. 31). As a result, she concluded that

Plaintiff was not disabled under sections 216(i) and 223(d) (Tr. 30–31).

### The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this

Memorandum and Order. The following summary of the record is directed to the points raised by

Plaintiff.

**Agency Forms**

Plaintiff was born in 1988 and was 21 years old on the alleged onset date of December 28, 2009 (Tr. 22).  He claims that he suffers from bipolar disorder, psychosis, and ADHD (Tr. 22).

**Evidentiary Hearing**

Plaintiff was represented by counsel at the hearing on August 8, 2023 (Tr. 59–77) but did not testify.  The ALJ incorporated Plaintiff's testimony from the prior hearing into the record: Plaintiff reported longstanding mental health issues, including frequent delusions and auditory hallucinations (Tr. 50–52).  As a result, he gained significant weight and was unable to live a normal life (Tr. 51).  He attended college but struggled due to his symptoms, completing his degree over the course of ten years (Tr. 1063).

At the 2023 hearing, David Overstreet, Plaintiff's treating physician testified that he had been treating Plaintiff since adolescence (Tr. 66).  He further testified that Plaintiff had extreme limitations in understanding, remembering, and applying information; moderate to extreme limitations in interacting with others; could persevere and persist for a period before rest; and had extreme limitation to manage himself (Tr. 66–68).

**Relevant Medical Records**

Between October 17, 2013 and October 7, 2019, Plaintiff received regular mental health treatment from his long-time providers, Dr. David Overstreet and Dr. Luis Giuffra.  Progress notes from Dr. Overstreet dated November 12, 2013, March 19, 2014, and April 16, 2014 document episodes of anger outbursts directed at Plaintiff's parents (R. 1747, 1754, 1755).

In August and October 2014, Dr. Overstreet observed isolation, anger, and rage (R. 1758, 1760), and in November 2014, he noted continued struggles with depression and explosive anger (R. 1761).  Plaintiff resumed therapy with Dr. Overstreet in June 2015, presenting with unstable

mood (R. 1763). Progress notes from January 2016 note paranoia.  In May 2016, Plaintiff reported feeling depleted (R. 1766, 1769). In August 2016, he experienced a setback with delusions and mania (R. 1771), followed by self-hatred in October 2016 (R. 1772).  A 2018 entry notes intense emotional reactions and paranoia triggered by a homework assignment (R. 1779).

Dr. Giuffra's notes from September 17, 2014, reflect complaints of depression and insomnia (R. 1116).  In May 2015, Plaintiff had trouble focusing and distractibility (R. 1109). Later notes from November 2015 and March 2016 reflect lethargy, unhappiness, sleep issues, anxiety, and racing thoughts (R. 1103, 1105).

On June 2 and August 2, 2016, Plaintiff presented with psychosis and described feeling like he wanted to "jump out of his skin" (R. 1100, 1101).  On August 17, 2016, psychosis continued, and Plaintiff appeared sedated (R. 1099).  Notes from 2017 through mid-2018 showed intermittent improvement with rough periods (R. 1088–1094), but on September 21, 2018, Plaintiff experienced paranoia and auditory hallucinations (R. 1087).

On March 12, 2019, Plaintiff reported that his thoughts "weren't right", and he felt sad and lethargic (R. 1085).  On March 29, 2019, psychosis was again noted (R. 1083).  On April 11, 2019, Plaintiff presented to the emergency room, reporting worsening paranoia, depression, and a sense of "impending doom" over the past 1–2 months.  He denied hallucinations or suicidal ideation, and was taking Depakote at the time (R. 584).

On May 10, 2019, Plaintiff told Dr. Giuffra he had gone to the hospital due to feeling overwhelmed (R. 1082).  On May 24, 2019, Dr. Giuffra noted continued psychosis, dysphoric

mood, cloudiness, and slow thought processes (R. 1081). In August and September 2019, Plaintiff continued to show dysphoric affect, moodiness, and outbursts (R. 1077, 1079).

### State Agency Consultants' Opinions

On September 17, 2020, Dr. David Voss reviewed Plaintiff's record and found that had moderate limitations, but concluded that those limitations would not prevent him from carrying out more than simple tasks, but less than complex tasks (Tr. 101–02). On December 14, 2020, Dr. Erika Gilyot-Montgomery found that Plaintiff had disabling restrictions as of October 8, 2019 (Tr. 139–41).

### Discussion

Plaintiff argues that the ALJ's finding of medical improvement rendering Plaintiff capable of work between October 2013 and October 2019 was not supported by substantial evidence. The Regulations define "medical improvement" as "any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." (Tr. 21).

Plaintiff contends the finding of medical improvement beginning October 17, 2013 is based on "vague and unexplained assessments", followed by "rampant and unabashed cherry-picking" of the record. Specifically, he argues that the ALJ concluded Plaintiff's mental impairments had improved without explaining why that change occurred or how it related to Plaintiff's ability to work (Doc. 12, pp. 9, 10). Plaintiff emphasizes that during the same period the ALJ claimed improvement, he was experiencing ongoing delusions, paranoia, and psychosis, culminating in a psychiatric hospitalization in 2019—none of which was meaningfully addressed by the ALJ (*Id.*,

pp. 10, 11).

The ALJ acknowledged Plaintiff's significant mental limitations (Tr. 26–27, 70),
referenced Plaintiff's 2019 emergency room visit, during which Plaintiff denied suicidal ideation
(Doc. 18, p. 8), and reasonably concluded Plaintiff was able to perform a limited range of work.
Additionally, the ALJ noted that during this period, Plaintiff attended college and consistently
exercised, went to the gym, ran, biked, and played golf, losing 25 pounds (Tr. 28, 1592).   In
concluding Plaintiff was not disabled between October 2013 and October 2019, the ALJ relied
upon multiple generally unremarkable mental status examinations (Tr. 24, 29) and Dr. Giuffra's
records indicating no psychosis (Tr. 1077–99, 1101–22). *See Leisgang v. Kijakazi*, 72 F.4th 216,
221 (7th Cir. 2023) (affirming ALJ cited mental status examinations as evidence contradicting a
treating medical source opinion).

Plaintiff also argues the ALJ ignored detailed letters and other medical records showing he
never demonstrated the ability for full-time work (Doc. 12, pp. 11–14).   While "the ALJ must
"'build a logical bridge from the evidence to his conclusion, . . . [s]he need not provide a complete
written evaluation of every piece of testimony and evidence.'" *Shideler v. Astrue*, 688 F.3d 306,
310 (7th Cir. 2012).   Thus, the ALJ was not required to cite every piece of evidence from the
voluminous record.    The ALJ did not error in finding Plaintiff that experienced medical
improvement.

Next, Plaintiff argues that the ALJ failed to properly evaluate the treating source opinions,
selectively citing evidence and overlooking detailed narrative letters and treatment notes from Drs.
Giuffra and Overstreet (Doc. 19, pp. 3, 4).   The ALJ actually assigned more restrictive limitations
than those proposed by state agency psychologist Dr. Voss and adopted the opinion of Dr. Gilyot-
Montgomery for the later period of disability (Tr. 28).   She also adopted the findings of Plaintiff's

treating physicians, Drs. Giuffra and Overstreet, for the periods before October 17, 2013 and after October 7, 2019 (*Id.*, pp. 29, 30). However, she reasonably found their opinions unsupported and inconsistent with the evidence for the intervening period.

Specifically, the ALJ noted that during the non-disabled period, Dr. Giuffra's mental status examinations were often unremarkable, showing normal appearance, affect, speech, and logical, sequential thought processes (Doc. 18, p. 13; Tr. 29). These findings undermined the more extreme limitations he later assessed. The ALJ also pointed to Dr. Overstreet's contemporaneous treatment notes, which consistently rated Plaintiff's symptoms as moderate—typically around 4 or 5 out of 10—and included GAF scores between 65 and 70, indicating only mild symptoms and generally good functioning (Tr. 30, 1746–80). Taken together, the ALJ found these internal inconsistencies diminished the persuasive value of the treating providers' opinions for the period between October 17, 2013 and October 7, 2019. The ALJ reasonably weighed conflicting medical opinions and was not required to fully adopt any one doctor's assessment. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (The ALJ was not "required to rely entirely on a particular physician's opinion or choose between the opinions."); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) (affirming ALJ's discounting of treating psychiatrist's opinion due to inconsistency with mental status exam findings). As such, the ALJ's evaluation complied with regulatory standards and was supported by substantial evidence.

## Conclusion

After careful review of the record, the Court finds that the ALJ's findings are supported by substantial evidence.  Therefore, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.  The Clerk of Court shall enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED:  March 29, 2025**

**STACI M. YANDLE**
**United States District Judge**